801 P.2d 473

**Warren BURTON, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA; William E. Smith, Administrative Law Judge of the Industrial Commission of the State of Arizona, Respondent Judge,**

**BECHTEL POWER CORP., Respondent Employer, and Industrial Indemnity, Respondent Carrier, Real Parties in Interest.**

No. 1 CA–SA 90–032.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 14, 1990.

Review Denied Dec. 18, 1990.*

---

Lawrence P. Nicholls, Phoenix, for petitioner.

The Indus. Com'n of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for respondent Carrier real party in interest.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Donald L. Cross, Larry L. Smith, Phoenix, for respondent Employer real party in interest.

## OPINION

SHELLEY, Judge.

Warren Burton (petitioner) had an industrial injury to his right thumb and wrist on February 20, 1980, while working for Bechtel Power Company (Bechtel). Bechtel was covered by a workmen's compensation policy issued by Industrial Indemnity (Industrial). Bechtel and Industrial will collectively be referred to as respondents.

Burton's claim was accepted for benefits and eventually closed at one time with a scheduled injury with a 75% impairment of the upper extremity.

In 1984, petitioner succeeded in re-opening his claim because his condition had worsened and he had problems in his shoulders and cervical area which needed active treatment. The claim remains open at the present time. Petitioner now claims that he is entitled to medical benefits for treatment of an osteoarthritic cervical condition. Industrial asserts that the osteoarthritic condition is unrelated to the industrial injury.

On June 5, 1986, Administrative Law Judge Bayles entered an order providing that petitioner would be permitted to have a tape recorder with him during a medical examination scheduled June 9, 1986. Between June of 1986 and October of 1989, the petitioner used his tape recorder at every medical examination set by Industrial. There is no indication in the record before us that the four physicians who examined petitioner prior to October, 1989, were interfered with or obstructed by the petitioner as the result of his use of the tape recorder during the examinations.

During October, 1989, Industrial noticed another independent medical examination to be performed by Dr. Gerald Moczynski, an orthopedic specialist, to be conducted November 10, 1989. Respondents filed a motion for protective order with Administrative Law Judge William E. Smith requesting that petitioner be prevented from tape recording that examination. On January 19, 1990, Judge Smith ruled that petitioner "is not entitled to the presence/use of a tape recorder" during Dr. Moczynski's examination. Petitioner asserts that Judge Smith's order constituted an abuse of discretion. He further asserts he has no equally plain, speedy, and adequate remedy by appeal. We have previously entered an order accepting jurisdiction with this decision to follow.

■ Respondents assert that any issues petitioner may wish to raise with respect to the Industrial Commission proceedings held to determine his right to additional benefits can be promptly and thoroughly addressed by him *after* the Industrial Commission issues an award. We disagree. If petitioner has to submit to the medical examination without the use of a tape recorder, the issue will become moot. If he fails to submit himself for the medical examination as a result of the order, he would be subject to sanctions. In the case of *Phelps Dodge Corp. v. Sup.Ct. of Cochise County,* 7 Ariz.App. 277, 438 P.2d 424 (1968), this court held that:

> [A]ppeal is not an adequate remedy for denial of discovery because a litigant has a right to:
>
> '... the means of obtaining in advance of the trial information concerning the issues and the means of producing at the trial the evidence necessary to sustain his action or defense.'

*McClatchy, [Newspapers v. Superior Court of Sacramento County,* 26 Cal.2d 386] 159 P.2d [944] at 948–949 [ (1945) ].

*Id.* at 280, 438 P.2d at 427. *See also Pedro v. Glenn,* 8 Ariz.App. 332, 446 P.2d 31 (1968). Judge Smith's order was certainly a discovery order. A tape recording of what was said by the petitioner and the doctor during the examination would constitute admissible evidence at any Industrial Commission hearing. We hold that petitioner does not have an adequate remedy after an award has been issued. Thus, this court properly accepted jurisdiction.

■ A.R.S. § 23–1026 provides for an independent medical examination. Subsection (A) states:

An employee who may be entitled to compensation ... shall submit himself for medical examination from time to time at a place reasonably convenient for the employee, if and when requested by the commission, the state compensation fund, his employer or the insurance carrier.

Subsection (B) provides that an employee: [M]ay have a physician present at the examination if procured and paid for by himself.

Subsection (C) reads:

If the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period.

Respondents assert:

Because the statute specifies that the applicant may have a physician present, this court should presume that the legislature meant what it said and, in attempting to ascertain the legislative intent, this court should apply the principal [sic] of *expressio unius est exclusio alterius.* This principal [sic] of construction provides that the inclusion of one or more specific items in a statute implies a legislative intent to exclude those others [sic] items not specifically included. *See Southwestern Iron and Steel Indus-*

*tries, Inc. v. State of Arizona,* 123 Ariz. 78, 597 P.2d 981 (1979). Thus, because the legislature has provided that an applicant such as Mr. Burton may have a physician present if he so wishes, the simplest answer to petitioner's request for relief is that the legislature did not intend that tape recorders or other devices be taken to independent medical examinations.

We disagree. In *Southwestern Iron,* our supreme court stated:

The principle of *expressio unius est exclusio alterius* as used in statutory and administrative rule construction means that *the expression of one or more items of a class and the exclusion of other items of the same class implies the legislative intent to exclude those items not so included.*

*Id.* at 79, 597 P.2d at 982 (emphasis added). A tape recorder is not in the "same class" as a person. Under the principle of *expressio unius est exclusio alterius,* the statute precludes the presence of all persons except for a physician of a claimant's choosing. It cannot be read to exclude an unobtrusive tape recorder.

In *Pedro,* the issue involved an order granting a medical examination "under the condition her counsel or a court reporter be present in an unobtrusive manner." The court stated:

In connection with the hearing on the entry of the order, the attorneys for Perkins insisted that a court reporter, or that one of the attorneys, be present during the examination. *They urged that this is a matter of right and that such presence is necessary to protect Perkins from improper questions. They urge that questions might be asked by the examining physician which call for evidence which would be inadmissible in relation to the issues or that questions might be asked which would be in violation of the Perkins' rights against self-incrimination,* there being an indication of a possible excessive use of narcotics brought on by the injuries sustained by one of the plaintiffs. Perkins urged that the order of

the respondent judge was wholly proper and was authorized by the rule wherein the rule provides that the order "shall specify the ... manner, (and) conditions ... of the examination ...". The defendants presented to the respondent judge *the affidavit of the appointed examining physician* and we quote from the affidavit in part, as follows:

'That in order for him to make an objective psychiatric examination of these individuals, it is necessary that said examinations be conducted out of the presence of any third person;

'*That in his experience, the presence in the examination room of a third person,* particularly one who is interested in the outcome of the examination, will cause a patient either consciously or unconsciously to alter or disguise his responses;

'That because of the above, any evaluation of a patient's condition following such an examination would be suspect and of questionable validity.'

....

With the avowed purpose of counsel's need for his presence it is difficult to visualize his 'unobtrusive presence' as authorized by the court's order.

*Id.* 8 Ariz.App. at 333–34, 446 P.2d 32–33 (emphasis added).

In the present case, there is no contention of a need to protect petitioner from improper questions but only to be sure that a recording of all statements will be available. Virtually all of the discussion in *Pedro* dealt with whether the attorney could be present. *Pedro* involved a *psychiatric* examination rather than a *physical* examination. The court noted that there are numerous cases from other jurisdictions that distinguish physical examinations from psychiatric examinations. In the present case, a physical examination was requested.

In *Pedro,* this court concluded:

It is a useless procedure to conduct a *psychiatric examination* if the examination cannot be conducted in the atmosphere most conducive to permitting the examining physician to reach a sound professional opinion. There are many facets to the personal background of an individual which are essential in a psychiatric examination. *There are questions in relation to this type of examination which go beyond the questions usually asked of a patient or an examinee in the usual physical examination.*

*Id.* at 334–35, 446 P.2d at 33–34 (emphasis added).

The court prohibited the presence of the attorney and the court reporter. The court reporter was apparently excluded because of the doctor's affidavit that the presence in the examination room of a third person would affect the validity of the examination.

In *Pedro,* this court stated that "the critical and controlling factor is the affidavit of the examining physician." *Id.* at 334, 446 P.2d at 33. It stated the reasons why the presence of a third person during the psychiatric examination would impede an accurate examination. In contrast, respondents in this case have not presented an affidavit by Dr. Moczynski. In their motion for a protective order, respondents stated:

Dr. Moczynski has advised the defendant insurance carrier and its counsel that he will not conduct an examination of the applicant if the applicant is permitted to tape record the evaluation. Dr. Moczynski advises that, as a matter of principle, he will not conduct an evaluation under those circumstances. He advises that is his practice to review the medical chart prior to conducting the examination and, at the time of the examination, he takes a history of the applicant and asks certain questions with respect to the applicant's history, condition, treatment, etc. He writes this information down and, after he conducts his physical examination and any diagnostic studies which he may order, he proceeds to dictate his report. He does not wish to be placed in the position of being second-guessed with respect to the history taken, etc., by a tape recording. Dr. Moczynski regards the tape recording as turning the examination into a circus and he refuses to

conduct an examination under those circumstances.

It is difficult to understand how a doctor could be second-guessed by a tape recording. Using a tape recorder does not turn an examination into a circus. Respondents do not claim that the doctor will be unable to make a valid physical examination because of the use of a tape recorder. Respondents assert that the statutory permission to have a doctor of the claimant's choosing present at the examination provides the claimant with a method to insure himself of the integrity and completeness of the examination if he is fearful of attending alone. This might be true with respect to some claimants. The expense of paying for a physician to be present would be unduly burdensome to many claimants.

Respondents assert that the use of a tape recorder turns the examination into a direct adversarial proceeding. We disagree. A tape recorder operates silently, asks no questions, and merely records any audible sounds.

In the response, respondents cite the case of *Goldenberg v. Zirinsky*, 114 A.D. 827, 100 N.Y.S. 251 (1906), contending that that court recognized that the intent of its state's statute permitting independent medical examinations was to allow a physician to conduct an examination without influence by either party. In that case, pursuant to state statute, the medical examiner was appointed by the court with no obligation to either party but with the evidence to be available to either party. The court stated:

> The order, in permitting the defendant to *have its own medical adviser present, even though a like privilege is accorded the plaintiff, is enlarging the scope of the statute.* It was not intended that such physical examination should be accorded to an adverse party for the purpose of enabling him to discover the weak points and to ignore the strong ones. The intent was to have an examination by physicians or surgeons designated by the court, owing no obligations to the parties; the evidence so brought out to be available to either party.

*Id.* 100 N.Y.S. at 252–53 (emphasis added). *Goldenberg* is strictly limited to that court's interpretation of the New York state statute. Arizona does not have any applicable statutes similar in any respect to the New York state statute. The use of a tape recorder has no similarities whatsoever to the presence of physicians as observers to a medical examination. *Goldenberg* is inapposite to the issues in the present case.

The order of the administrative law judge is reversed. The administrative law judge is directed to allow the claimant to use a tape recorder during the examination by Dr. Moczynski.

VOSS, J., concurs.

EUBANK, Judge, dissenting.

I dissent. First, special action jurisdiction should not have been granted by the majority because petitioner has an adequate remedy by appeal. Any reversal of an award by our court opens all issues *de novo* on remand to the Commission. Thus, outside of delay, there is no prejudice to the parties.

Second, the effect of the majority opinion is to amend the discovery rules of the Industrial Commission, granting to all petitioners the right to tape record the medical examination of the medical doctor. The power to make such a rule resides in the Industrial Commission and not in the courts.

The only issue properly before us should be whether or not the Administrative Law Judge (ALJ) abused his discretion in ordering that petitioner "is not entitled to the presence/use of a tape recorder" during Dr. Moczynski's medical examination. The fact that other doctors do not mind being tape recorded is irrelevant to the issue.

In order to place the issue in proper perspective, the law must be stated. Article XVIII, Section 8, of the Arizona Constitution, directs the state legislature to enact a "Workmen's Compensation Law." In response, the legislature enacted the State Workers Compensation Act, A.R.S. § 23–901, *et seq.* The act designates the Industrial Commission as the regulatory agency to administer the act with "full power, jurisdiction and authority." A.R.S.

§ 23–107(A)(6). Additionally, the act authorizes the Commission to "formulate and adopt rules and regulations for effecting the purpose of this article." A.R.S. § 23–107(A)(1). In accordance with this authority, the Commission has adopted a number of discovery rules, for example, Rules 4–13–142, 143, 144, 146, 147, 155. Rule 4–13–147 relates specifically to videotape recordings and motion pictures. It is the rule closest to addressing the tape recording of a physician's medical examination issue. Subsection (E) specifically precludes the use of videotape recordings or motion pictures "of medical procedures performed by licensed physicians" as evidence.

All of the Commission discovery rules leave discretion in the ALJ to settle disputes. In the instant special action, that is exactly what the ALJ did: adjust a discovery dispute. In the light of the policy expressed by the Commission in Rule 4–13–147(E), and this court in *Pedro v. Glenn,* 8 Ariz.App. 332, 446 P.2d 31 (1968), did the ALJ abuse his discretion, where the doctor and respondent employer objected to petitioner's tape recording the medical examination, in ordering that the medical examination not be tape recorded? I would hold that the ALJ did not abuse his discretion and affirm his order limiting discovery. For these reasons, I voted to decline jurisdiction of this special action.